# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

                Plaintiff,

                              Crim. No. 11-141 (RHK/JJK)
                              **MEMORANDUM OPINION**
                              **AND ORDER**

v.

Bruce Francis Prevost,

                Defendant.

James S. Alexander, Assistant United States Attorney, Minneapolis, Minnesota, for Plaintiff.

Deborah K. Ellis, Ellis Law Office, St. Paul, Minnesota, for Petitioner Colleen Prevost.

## INTRODUCTION

Defendant's wife, Colleen Prevost, has filed a Petition (Doc. No. 427) asserting an interest in $120,598.31 seized from a PNC Bank account in her name, which the Court ordered forfeited to the Government on April 9, 2015. The Government now moves for summary judgment on Prevost's Petition. For the reasons that follow, the Court will grant the Motion.[1]

---

[1] To avoid confusion, the Court refers to Petitioner Colleen Prevost as "Prevost" and Defendant Bruce Prevost as "Defendant" throughout this Memorandum Opinion and Order.

## BACKGROUND

The relevant facts are undisputed. Defendant was charged in a 4-Count Indictment with securities fraud in connection with investments his companies made in the large Ponzi scheme orchestrated by Tom Petters. He pleaded guilty shortly after he was indicted and, as part of his Plea Agreement, acknowledged that his companies earned more than $58 million in fees from 2003 through 2008 as a result of the Petters investments. (See Plea Agreement ¶ 2.) On November 7, 2013, the Court entered an Order (Doc. No. 303) forfeiting to the Government all of Defendant's property derived from (or proceeds of) the fraud, or otherwise traceable to it; it later amended the Order to include a $58 million personal money judgment against Defendant. (See Doc. No. 320.) The vast majority of the forfeiture money judgment remains unsatisfied.

On April 8, 2015, the Government filed a Motion for a Second Preliminary Order of Forfeiture, seeking to forfeit the funds at issue here. (Doc. No. 407.) In support, it submitted a Declaration of FBI Special Agent Brian Kinney, in which he traced the fees Defendant earned from the Petters fraud to funds used to pay for the construction, between 2006 and 2008, of "a multi-million dollar house" in Palm Beach Gardens, Florida, in which Defendant and Prevost lived. (Doc. No. 408, ¶ 5.) According to Kinney, the property on which the home was built originally was purchased by the Prevosts in 1992 for $244,000, and after several refinancings and the multi-million dollar construction, was mortgaged to ING Bank ("ING") for $900,000 in 2009. (Id. ¶ 12; see also Prevost Aff. ¶¶ 6-15.) Then, in July 2012 – after Defendant was indicted and pleaded guilty – ownership of the home was transferred solely to Prevost, subject to the ING mortgage and a $500,000 lien held by

the bankruptcy receiver for Defendant's companies. (Kinney Decl. ¶ 14.) In November 2013, Prevost sold the Palm Beach property for $1.6 million and, after paying off the ING mortgage and the $500,000 bankruptcy lien, $229,933.02 remained; those funds were deposited into an account Prevost held at PNC Bank. (Id. ¶¶ 14-16; Prevost Aff. ¶ 18.) It is unclear when the Government learned of these funds, but by the time it seized them in October 2014, only $120,598.31 remained. (Kinney Decl. ¶ 17.)[2] The Government then moved to forfeit those funds; the Court granted the Motion, finding that the Government had "established the requisite nexus" between them "and the offenses to which the [D]efendant has pled guilty." (Doc. No. 409 at 1.)

After publishing notice of the forfeiture,[3] Prevost filed a Petition asserting that she was entitled to keep the funds as an "innocent owner of the home she and her husband bought and improved." (Doc. No. 427 at 2.) The Government contends otherwise and now seeks summary judgment on the Petition. Its Motion has been fully briefed and is ripe for disposition.

## STANDARD OF REVIEW

Title 21 U.S.C. § 853 "articulates procedures by which third parties may assert their interest in forfeited property." United States v. Timley, 507 F.3d 1125, 1129 (8th Cir.

---

[2] Prevost apparently used the funds for living expenses and to "pa[y] back loans from friends and family members who assisted the Prevosts during the pendency of [Defendant's] criminal proceedings." (Doc. No. 427 at 2.)

[3] Following entry of an order of forfeiture, the Government is required to "publish notice of the order and of its intent to dispose of the [forfeited] property" in order to afford parties asserting an interest an opportunity to object. 21 U.S.C. § 853(n)(1); see also 28 U.S.C. § 2461(c) (incorporating § 853(n)(1), which relates to drug crimes, into "all stages of a criminal forfeiture proceeding").


2007); accord, e.g., United States v. Puig, 419 F.3d 700, 703 (8th Cir. 2005).  The statute provides, in pertinent part, that "any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States may . . . petition the court . . . to adjudicate the validity of his alleged interest in the property."  21 U.S.C. § 853(n)(2).  Such an "ancillary proceeding" is governed by Federal Rule of Criminal Procedure 32.2(c), see Timley, 507 F.3d at 1129, and "closely resembles a civil action," Pacheco v. Serendensky, 393 F.3d 348, 352 (2d Cir. 2004); accord Fed. R. Crim. P. 32.2 advisory committee's note to subdivision (c).

Like in a civil action, the Government may move for summary judgment on a third-party petition under the same auspices as Federal Rule of Civil Procedure 56.  Fed. R. Crim. P. 32.2(c)(1)(B).  Hence, the pertinent question is whether, drawing all reasonable inferences in Prevost's favor, there is no genuine issue of material fact and the Government is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009).  The Court views the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to Prevost.  Beard v. Banks, 548 U.S 521, 529-30 (2006).  No hearing is necessary where the material facts are undisputed and the petitioner "could not prevail even if [a hearing] were granted."  United States v. White, 675 F.3d 1073, 1081 (8th Cir. 2012); see also, e.g., Mack v. Dillon, 594 F.3d 620, 622 (8th Cir. 2010) (*per curiam*) (court need not hold hearing on summary-judgment motion in the absence of prior request).

## ANALYSIS

To prevail in this ancillary proceeding, Prevost "must either demonstrate priority of ownership at the time of the offense . . . or that [s]he subsequently acquired the property" she now seeks "as a bona fide purchaser for value." Timley, 507 F.3d at 1130 (citing 21 U.S.C. § 853(n)(6)(A)-(B)). She proceeds under the first route, attempting to show priority of ownership, but her effort is unavailing.

The thrust of Prevost's argument is that although fraud proceeds were used to fund the construction of a multi-million dollar home on the property between 2006 and 2008, the property was initially purchased with untainted funds and further improved with untainted funds – adding a swimming pool, building a guest house, and the like – between 1992 and 2004. (Prevost Aff. ¶¶ 3-11.) As a result of these additions and market appreciation, Prevost opines that "the fair market value of [the property] in 2002 was between $500,000 and $600,000." (Id. ¶ 13; see also Cleveland Aff. ¶ 5.) And because, according to Prevost, "there was an excess of half a million dollars of equity in the property" at that time, "prior to any offense conduct by [Defendant]," and "[a]ssuming that [she] was entitled to only one half of the equity in the property as an innocent spouse," her "accrued equity . . . was at least $250,000," and hence she is entitled to keep all of the funds seized by the Government. (Mem. in Opp'n 2-5.) There are two key flaws with this argument.

First, Prevost ignores what actually happened to the funds received from the sale of the property. She argues she enjoys priority to the remaining funds in the PNC Bank account because they totaled less than the $250,000 in purported "equity" she possessed, but in doing so she overlooks that the *rest* of the $1.6 million received from the sale of the

house had already been expended by the time of the Government's seizure.   Indeed, $500,000 was used to pay off the lien Prevost agreed to as part of the bankruptcy proceedings; nearly $900,000 was used paid off the ING mortgage entered into by Prevost and Defendant; and at least some portion of the remainder was used to cover her living expenses and to "pa[y] back loans from [Prevost's] friends and family members."   (Doc. No. 427 at 2.)   In other words, more than $1.4 million has *already* been expended for Prevost's benefit, which far outstrips the property's so-called "untainted" value of $500,000-$600,000 or her "accrued equity [of] at least $250,000."   Thus, any priority of her (alleged) equity has already been extinguished, and she cannot establish priority in the small remaining balance seized by the Government.

Second, when both tainted and untainted funds are expended in connection with real property, the Government is entitled to forfeit that *portion* of the property for which tainted funds were expended.   See, e.g., United States v. Real Property and Premises Located at 216 Kenmore Ave., 657 F. Supp. 2d 1060, 1066 (D. Minn. 2009) (Kyle. J.) (collecting cases).   Both Prevost and the Government recognize this proportionality principle.   (See Gov't Mem. at 6-8; Mem. in Opp'n at 3-4.)   And although the parties dispute the percentage of untainted versus tainted funds used between 2006 and 2008 for construction on the property, even using Prevost's more generous estimate, 69% of the construction costs were paid with tainted funds and 31% of the funds were untainted.   (See Mem. in Opp'n at 4.)   This means Prevost was entitled to, at most, $496,000 (31%) of the $1.6 million sale price – but satisfaction of the ING mortgage and bankruptcy lien far exceeded that amount.   In fact, even if the Court were to *ignore* the nearly $1.4 million used for

those purposes (to Prevost's benefit) and focus solely on the funds remaining *after* the mortgage and lien were paid off – $ 229,933.02 – Prevost would still be entitled to no more than 31% of that amount, or $71,279.24.   Yet, by the time the Government effected its seizure, she had already spent much more.   The Court concludes, therefore, that she has no priority of interest in the funds seized.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that the Government's Motion for Summary Judgment and Final Order of Forfeiture (Doc. No. 438) is **GRANTED**, and Prevost's Petition (Doc. No. 427) is **DISMISSED WITH PREJUDICE**.   It is further **ORDERED** that all right, title, and interest in the $120,598.31 seized from PNC Bank account 12-1418-1868 is forfeited to and vested in the United States, and the funds shall be disposed of by the United States in accordance with law.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:   October 30, 2015                               s/ Richard H. Kyle
                                                        RICHARD H. KYLE
                                                        United States District Judge